IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHARDONNAY PANTASTICO,<br><br>     Plaintiff,<br><br> vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaiʻi; et al.,<br><br>     Defendants. | CIVIL NO. 18-00065 JAO-WRP<br><br>**ORDER GRANTING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANT NAGAMINE'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND GRANTING DEFENDANT HERMOSURA'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

**ORDER GRANTING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANT NAGAMINE'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND GRANTING DEFENDANT HERMOSURA'S MOTION FOR JUDGMENT ON THE PLEADINGS**

This case concerns the alleged sexual harassment of Plaintiff by her softball coach at James P. Campbell High School ("Campbell") and the school's alleged failure to prevent it. Plaintiff also asserts that Campbell's female athletic facilities were not equal to the male athletic facilities in violation of Title IX. Plaintiff brings her claims against two defendants in their individual capacities, Kevin

Nagamine and Michael Hermosura, (the "Individual Defendants"); the State of Hawaiʻi Department of Education; and certain individuals in their official capacities (collectively the "State Defendants").[1]  Before the Court are Nagamine's Motion for Judgment on the Pleadings, Hermosura's Motion for Judgment on the Pleadings, and the State Defendants' Motion for Summary Judgment.  ECF Nos. 39, 43, 44.

For the reasons set forth below, the Court GRANTS the State Defendants' Motion for Summary Judgment, GRANTS IN PART AND DENIES IN PART Defendant Nagamine's Motion for Judgment on the Pleadings, and GRANTS Defendant Hermosura's Motion for Judgment on the Pleadings.

## I.    BACKGROUND

### A.    Facts

The following facts are undisputed.  Plaintiff entered Campbell in 2012 and graduated in 2016.  ECF No. 1 ¶¶ 38, 39.  She was a standout softball player at Campbell, playing for both the junior varsity and varsity teams her freshman year and the varsity team until she graduated.  *Id*.  ¶¶ 41, 42, 45; ECF No. 52-2 ¶ 17.

---

[1] The "State Defendants" refer specifically to the State of Hawaiʻi Department of Education; Kathryn Matayoshi, in her official capacity as Superintendent of the Department of Education; Naomi Takamori, in her official capacity as the former Principal of Campbell; Jon Henry Lee, in his official capacity as the Principal of Campbell; Duane Izumi, in his official capacity as the former Athletic Director of Campbell; and Samuel Delos Reyes, in his official capacity as the Athletic Director of Campbell.  ECF No. 1.

Defendant Kevin Nagamine was the head coach of the junior varsity team and was an assistant coach of the varsity team. ECF No. 1 ¶ 45. Defendant Hermosura was the head varsity softball coach. ECF No. 52-3 ¶¶ 12, 14.

The Complaint alleges that during her time at Campbell, Nagamine gave Plaintiff special attention by buying her gifts and snacks, giving her rides to practice, and befriending her. ECF No. 1 ¶¶ 47–57. Nagamine engaged in conversations with her about her menstrual cycles and birth control methods and his own deteriorating marital sex life. *Id.* ¶¶ 54, 56. Then, when Plaintiff turned eighteen years old but was still a student at Campbell, the two engaged in a sexual relationship. ECF No. 1 ¶ 59. Defendant Nagamine graduated from high school roughly twenty years before Plaintiff. *See* ECF No. 58 at 4.

### B. Plaintiff's Declarations

In opposition to the State Defendants' Motion for Summary Judgment, Plaintiff submitted her own declaration and a declaration of one of her teammates at Campbell, Kyra Hoohuli. In her declaration, Plaintiff alleges that Nagamine often showed her and other teammates photos of naked women on his phone, complained about his relationship with his wife, and asked Plaintiff about who she was dating and suggested she date certain people. ECF No. 52-2 ¶¶ 16, 19, 20, 22, 23, 29, 30, 31. Hoohuli's declaration states that Nagamine showed the softball players pictures of porn stars and asked them which one they would rather have

sex with; all of the softball coaches constantly made sexual jokes and openly discussed which former softball players they would most like to have sex with; and coach Hermosura told the players they were getting fat and that they needed to lose weight or they wouldn't "get any guys."  ECF No. 52-3 ¶¶ 25–30.

According to Plaintiff's declaration, Nagamine's harassment of Plaintiff increased significantly during her senior year, when Nagamine began to openly tell Plaintiff that he could "treat her better" than the person she was dating and that he would "show her how it was supposed to be done."  *Id.* ¶ 32.  For Plaintiff's eighteenth birthday in February of 2016, Nagamine allegedly gave her a gift bag of sports bras, athletic wear, snacks, and balloons.  *Id.* ¶ 35.  Shortly after that, the softball team traveled to Maui for a tournament.  *Id.* ¶ 36.  One night during the trip, Plaintiff and other female players were in the coaches' hotel room when Nagamine allegedly offered her a sip of alcohol and told her that if she was not comfortable sleeping there, she could sleep in his room with his daughter.  *Id.* ¶¶ 38–39.  When she said she was fine, he insisted and said that he would carry her to his room if he had to.  *Id.*  Plaintiff's declaration does not indicate what else, if anything, happened that night.  After the trip, Nagamine began sending Plaintiff approximately ten to fifteen text messages a day, explicitly stating he wanted to be with her.  *Id.* ¶ 41.  He sent Plaintiff messages such as "I want to be with you," and "you're all I think about."  *Id.*

Soon after the trip, Nagamine picked up Plaintiff for practice but instead drove her to a nearby shopping center. He then told her that he planned to leave his wife for her. *Id.* ¶ 42. Plaintiff told him that was not a good idea, but she also felt uncomfortable disagreeing with him and did not want to do anything to upset him because he was her coach. Plaintiff still had to play her senior year under him, which she believed was critical to her college softball recruitment. *Id.* ¶¶ 43–44. Nagamine made Plaintiff promise not to tell anyone about their potential relationship, and then forced Plaintiff to kiss him before taking her to practice. *Id.* ¶ 46.

After that, Nagamine and Plaintiff engaged in a sexual relationship that Plaintiff felt pressured into continuing. *Id.* ¶¶ 43, 44, 67. While Plaintiff was still a senior in high school, Nagamine and Plaintiff had sex in the back of his truck before practices, and sometimes during school hours. *Id.* ¶¶ 50–52. After graduating from Campbell, Plaintiff began playing softball at the University of Hawaiʻi. ECF No. 52-2 ¶¶ 58, 71. Plaintiff and Nagamine continued their sexual relationship during Plaintiff's freshman year in college. ECF No. 52-2 ¶¶ 58–60. Then, when Nagamine's wife discovered the relationship in the fall of 2016, she informed Plaintiff's parents that Plaintiff and Nagamine were having sex. When Plaintiff's father found out, he brutally assaulted her. *Id.* ¶¶ 64–67. After the assault Plaintiff began suffering from depression and attempted suicide. *Id.* ¶¶ 68–

70. She no longer enjoys softball as much as she used to and remains emotionally distraught. *Id.* ¶¶ 71–74.

Before this lawsuit, Plaintiff had not informed the school about the inappropriate comments Nagamine made or the nude photos he showed the players. Nor did Plaintiff inform the school about Nagamine's pursuit of Plaintiff or their sexual relationship.[2] Plaintiff did, however, inform one of the assistant coaches about her sexual relationship with Nagamine: toward the end of her senior year, Plaintiff and Nagamine were having sex at his house when his wife came home, and Plaintiff ran from the house. *Id.* ¶¶ 52–54. She called assistant coach Ryan Palipti for a ride home and told him what happened. *Id.* ¶¶ 52–54.

Plaintiff's Complaint also alleges that the State Defendants were aware that Nagamine had previously had a sexual relationship with an underaged softball player at Campbell while he was a coach, but still re-hired him back to the softball program. ECF No. 1 ¶¶ 67–68, 74; ECF No. 51 ¶ 6. Hoohuli states in her declaration that "it was well known that Coach Kevin [Nagamine] was let go from the Campbell girls' softball program [in or around 1997] because he was fooling around with an underage softball player and student at Campbell High." ECF No. 52-3 ¶ 17. It is undisputed that: (1) at the time, Nagamine was a recent graduate of

_____

[2] It appears that Plaintiff may have informed Hermosura of Nagamine's conduct in April 2017, but this was after she had already graduated and after Nagamine no longer worked at the school. *See* ECF No. 45 ¶ 4.

Campbell; (2) Nagamine married this player; and (3) Nagamine and this player are still married.  ECF No. 1 ¶¶ 61–65.

### C.    Procedural History

Plaintiff filed her Complaint against Nagamine, Hermosura, and the State Defendants on February 16, 2018.  ECF No. 1.  She asserts the following claims against all Defendants:  Violation of 42 U.S.C. § 1983 (Count 1); Violations of Title IX for both sexual harassment and unequal athletic treatment (Count 2); Negligence (Count 3); Negligent Hiring, Training and Supervision (Count 4); Battery (Count 5); Negligent Infliction of Emotional Distress (Count 6); Intentional Infliction of Emotional Distress (Count 7); Punitive Damages (Count 8).

## II.    STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The State Defendants move for summary judgment on all Plaintiffs' claims.  For the reasons set forth below, the Court GRANTS the State Defendants' Motion for Summary Judgment on Plaintiff's federal claims (Counts 1 and 2) and DISMISSES Plaintiff's state law claims (Counts 3–8) WITHOUT PREJUDICE for lack of jurisdiction.

### A.    Standard of Review

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a).  Federal Rule of Civil Procedure 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] . . . come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986) (internal quotation marks and citations omitted).  "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his [or her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the Court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmoving party] is to be believed, and all justifiable inferences are to be drawn in his [or her] favor").

**B.     Analysis**

**i.     Constitutional Violation under 42 U.S.C. § 1983 (Count 1)**

Plaintiff initially brought a claim against the State Defendants under 42 U.S.C. § 1983. ECF No. 1 at 17. But in her Opposition, Plaintiff expressly abandoned that claim against the State Defendants. ECF No. 52-1 at 13. Thus, the State Defendants' Motion for Summary Judgment on the § 1983 claim (Count 1) is GRANTED.

**ii.     Plaintiff's Title IX Sexual Harassment Claim (Count 2)**

Plaintiff alleges that the State Defendants are liable for Nagamine's sexual harassment of her under Title IX. The State Defendants move for summary

judgment on the grounds that they did not have actual knowledge of the harassment and did not act deliberately indifferent to Plaintiff's harassment. *See Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274 (1998).

In *Gebser*, the Supreme Court addressed the question of "when a school district may be held liable . . . for the sexual harassment of a student by one of the district's teachers." 524 U.S. at 277. There, a high school teacher made sexually suggestive comments to his students, and then engaged in a sexual relationship with an underaged student in his class. *Id.* at 278. The Court held that, in order to establish damages against a school district for a teacher's sexual harassment or abuse of a student under Title IX, a plaintiff must show that "an official who at a minimum ha[d] authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf ha[d] actual knowledge of discrimination" and responded with "deliberate indifference."[3] *Id.* at 290. Critically, the school district must have had actual knowledge of the harassment;

---

[3] Plaintiff argues that the State Defendants can be liable if they *either* had actual knowledge of the harassment *or* acted with deliberate indifference. But the caselaw that Plaintiff cites unequivocally holds that the State can only be liable if it had actual knowledge of harassment *and* acted with deliberate indifference. *See Gebser*, 524 U.S. at 290; *Doe v. Sch. Bd. of Broward Cty.*, 603 F.3d 1248, 1254 (11th Cir. 2010); *Hyut v. State Univ. of N.Y.*, 352 F.3d 733, 751 (2d Cir. 2003). Indeed, it makes no sense to hold the State liable where it learns of sexual harassment (actual knowledge) but takes immediate and proper corrective action (no deliberate indifference). Likewise, it is difficult to understand how the State Defendants could possibly act with deliberate indifference to harassment of which it has no knowledge.

evidence that a reasonable official should have known is insufficient to impose liability on the school district. *See Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1175 (10th Cir. 2007).

Courts have also held that a school district may be liable where there is actual knowledge of a teacher's prior sexual harassment but was deliberately indifferent to it, resulting in the plaintiff's harm. *See, e.g.*, *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1257–59 (11th Cir. 2010). Under this theory of liability, actual knowledge of prior similar abuses which put the school on notice that the teacher was at a "substantial risk" of abusing other students is sufficient. *Escue v. N. OK Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006); *Broward*, 604 F.3d at 1259; *see also Thomas v. Bd. of Trs. of the Neb. State Colls.*, 667 F. App'x 560, 562 (8th Cir. 2016). *But see Baynard v. Malone*, 268 F.3d 228, 237–38 (4th Cir. 2001) (holding that district's liability arises only on actual knowledge "of the discriminatory conduct in question").

In opposition, Plaintiff does not offer any evidence that the State Defendants had actual knowledge of Nagamine's alleged sexual harassment of Plaintiff. In Plaintiff's Concise Statement of Facts, the only person alleged to have had actual knowledge of Nagamine's sexual relationship with Plaintiff is Ryan Palipti, one of the softball assistant coaches. *See* ECF No. 51 ¶ 15. But there is no indication that

Palipti, as an assistant coach, had the "authority to address the alleged

discrimination and to institute corrective measures on the recipient's behalf."

*Gebser*, 524 U.S. at 290; *see also DeCecco v. Univ. of S.C.*, 918 F. Supp. 2d 471,

492 (D.S.C. 2013) (finding that a head coach did not have sufficient authority over

assistant coach harasser to warrant the university's liability, because the assistant

coach reported to the administration not to the head coach); *Baynard v. Malone*,

268 F.3d 228 (4th Cir. 2001) ("It appears that the person who receives notice of the

alleged wrongdoing must have the power to fire or impose discipline."). Thus, the

State Defendants cannot be liable based on Palipti's actual knowledge of Plaintiff's

relationship with Nagamine, and Plaintiff does not argue otherwise.

Instead, Plaintiff's theory rests on the allegation that the State Defendants

had actual knowledge that Nagamine had a prior sexual relationship with an

underaged Campbell softball player while he was a coach, and yet were

deliberately indifferent by re-hiring him. *See* ECF No. 52-1 at 7–9. But Plaintiff

has also failed to offer any evidence that the State Defendants had actual

knowledge of Nagamine's alleged prior sexual relationship with a student.

In Plaintiff's Concise Statement of Facts, Plaintiff alleges that the State

Defendants terminated Nagamine for a prior sexual relationship with a student.

ECF No. 51 ¶¶ 2, 6, 7. The evidentiary support for this comes from the allegations

in the Complaint—which are insufficient to defeat a motion for summary

judgment, *Anderson*, 477 U.S. at 248—and from Hoohuli's declaration.  *Id.*  But Hoohuli's declaration does not establish a genuine issue of fact about whether the State Defendants had actual knowledge of Nagamine's alleged prior sexual relationship.  Hoohuli states:

> [I]t was well known that [Nagamine] was let go from the Campbell girls' softball program because he was fooling around with an underage softball player and student at Campbell High.  He ended up getting her pregnant.  The softball girl that he got pregnant is his current wife[.] . . . It was also well known that [Nagamine] left the Campbell High School softball coaching staff twice.  The first time was on or around 1997, when [another coach] found out that [Nagamine] got [his current wife] pregnant while she was a player and student on the Campbell team.

ECF No. 52-3 ¶¶ 17, 18, 21, 22.

While the Court is aware of the need to draw all reasonable inferences in favor of Plaintiff here, alleging that Nagamine's prior relationship was "well known" is not evidence that someone with sufficient authority actually knew about it.  Constructive knowledge—that is, what the State Defendants should have known—is insufficient to impose liability on the State.  *See Oden*, 440 F.3d at 1089.  Further, there is nothing in Hoohuli's declaration establishing that she has personal knowledge of what the State Defendants knew about Nagamine's alleged prior sexual relationship.  *See* Fed. R. Civ. P. 56(c)(4) (requiring declaration "be made on personal knowledge" and setting forth facts "that would be admissible in evidence"); *see also Block v. City of L.A.*, 253 F.3d 410, 419 (9th Cir. 2001) (abuse

of discretion to rely on declaration not made on personal knowledge).  Indeed, at the time of Nagamine's alleged prior sexual relationship with a student in 1997, Hoohuli was not even born yet.  *See* ECF No. 52-3 ¶ 6.

Plaintiff has not established a genuine dispute of fact regarding whether the State Defendants knew of Nagamine's alleged prior sexual relationship with a student and then re-hired him despite this knowledge.  ECF No. 51 ¶¶ 2, 6, 7. Despite ample time to conduct discovery,[4] Plaintiff continues to rely on bare allegations and innuendo, which are insufficient to defeat a motion for summary judgment.  *See Githere v. Consolidated Amusement Corp. Inc.*, 258 Fed. App'x. 122, 124 (9th Cir. 2007).  Thus, because Plaintiff has failed to present any evidence that the State Defendants had actual knowledge of any of Nagamine's alleged sexual harassment, the State Defendants' Motion for Summary Judgment on Plaintiff's Title IX sexual harassment claim (Count 2) is GRANTED.

### iii.    Plaintiff's Title IX Equal Treatment Claim (Count 2)

Plaintiff also alleges that the State Defendants failed to provide Campbell's female athletes with certain athletic facilities in violation of Title IX's equal treatment requirements.  ECF No. 1 ¶¶ 85, 86, 90, 91.  The State Defendants move

---

[4] Although the discovery period is still ongoing, Plaintiff has had since August 2018 to conduct necessary discovery.  *See* ECF No. 26.  Moreover, Plaintiff did not seek additional time to oppose summary judgment as she could have done under Federal Rule of Civil Procedure 56(d).

for summary judgment on the ground that Plaintiff failed to present any evidence of gender-based inequality.  ECF No. 44-1 at 10–11.

Under Title IX's equal treatment requirements, schools that operate "interscholastic, intercollegiate, club or intramural athletics shall provide equal athletic opportunity for members of both sexes."  34 C.F.R. § 106.41(c).  "[E]qual treatment claims allege sex-based differences in the schedules, equipment, coaching, and other factors affecting participants in athletics."  *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 965 (9th Cir. 2010).  "Compliance in the area of equal treatment and benefits is based on an *overall comparison of the male and female athletic programs*, including the provision of equipment and supplies, the scheduling of games and practices, the availability of training facilities, the opportunity to receive coaching, the provision of locker rooms and other facilities and services, and publicity."  *Carpio, for & on behalf of A.C. v. Fed. Way Sch. Dist.*, No. C15-46 MJP, 2016 WL 8710018, at *2, 2016 U.S. Dist. LEXIS 32638, at *4 (W.D. Wash. Mar. 11, 2016) (citing 34 C.F.R. § 106.41(c)) (emphasis added).  Disparities in athletics may constitute a Title IX violation only where the disparity is substantial enough to deny equality of athletic opportunity.  *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 293–94 (2d Cir. 2004).

Plaintiff bases her claim on the allegation that the female softball players lacked adequate athletic facilities, such as locker rooms, restrooms, and even access to water. *See* ECF No. 1 at ¶¶ 9–11; ECF No. 52-1 at 10; ECF No. 51 ¶¶ 4–5. But she offers nothing to show what facilities existed for male athletes, if any. ECF No. 52-3 ¶ 34; *see also* ECF No. 51 ¶¶ 4, 5, 13. Indeed, Plaintiff's entire unequal treatment claim rests on Hoohuli's declaration which states that the female softball players did not have changing facilities and says nothing about the male facilities. Without any comparison to the male facilities, there is no evidence of any sex-based disparity. *McCormick*, 370 F.3d at 293–94.

Thus, because Plaintiff failed to present any evidence of disparity in athletic facilities on the basis of sex, the State Defendants' Motion for Summary Judgment on Plaintiff's Title IX equal treatment claim (Count 2) is GRANTED.[5]

### iv. State Law Claims

Because the Court grants summary judgment on all the federal claims asserted against the State Defendants, and because there is no diversity jurisdiction, there is no basis for the Court's continued jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *Souch v. Howard*, 27 F. App'x 793, 795 (9th Cir.

---

[5] The Court notes that this ruling has no bearing on other Title IX cases involving Campbell. *See, e.g.*, *A.B., et al. v. Hawaii State Dep't of Educ., et al.*, Civil No. 18-00477 LEK-RT. Rather, this ruling only addresses whether Plaintiff offered enough evidence to survive a motion for summary judgment here.

2001) ("When all federal claims have been dismissed before trial, the interests promoted by supplemental jurisdiction are no longer present, and a court should decline to exercise jurisdiction over state-law claims."). Thus, the Court DISMISSES WITHOUT PREJUDICE all remaining state law claims (Counts 3–8) against the State Defendants.

## III.   NAGAMINE'S MOTION FOR JUDGMENT ON THE PLEADINGS

Although Nagamine's Motion is titled as a Motion to Dismiss under Rule 12(b)(6), counsel for Nagamine clarified at the hearing that his Motion is brought pursuant to Rule 12(c). The standards for motions to dismiss for failing to state a claim under Rule 12(b)(6) and Rule 12(c) are " functionally identical," *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

### A.   Standard of Review

Under Rule 12(c), a party may move for judgment on the pleadings any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Courts may grant such motions only when, after accepting the allegations as true and construing them in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). If the motion for judgment on the pleadings is based on a failure to state a claim upon which relief can be granted, the standard is the same as for a motion to dismiss under Rule 12(b)(6). *McGlinchy v. Shell*

*Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *see also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). The standard for granting leave to amend under Rule 12(c) is also identical to Rule 12(b)(6). *Pac. W. Grp., Inc. v. Real Time Sols., Inc.*, 321 F. App'x 566, 569 (9th Cir. 2008). Thus, "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

## B.     Analysis

### i.     Constitutional Violations under 42 U.S.C. § 1983 (Count 1)

Nagamine asserts that Plaintiff fails to state a claim under § 1983 because the Complaint does not allege any specific constitutional violation. To state a claim under § 1983, Plaintiff must plead (1) that a right secured by the Constitution and laws of the United States was violated; and (2) that the violation was committed by a person acting under color of state law. *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015). Although not explicitly stated in the Complaint, Plaintiff contends that her § 1983 claim is based on Nagamine's sexual harassment of Plaintiff in violation of two constitutional rights: the right to bodily integrity under the Due Process Clause; and "the right to an educational environment free

from sexual harassment" under the Equal Protection Clause.  ECF No. 53 at 4.  In Reply, Nagamine argues that the facts alleged do not amount to a violation of either constitutional right.  ECF No. 57 at 5–8.

A plaintiff's failure to plead in a complaint the specific constitutional right allegedly violated is not per se fatal.  *See Reyes v. Hawai'i*, Civ. No. 17-00143-JAO-RT, 2019 WL 1746570, at *3, 2019 U.S. Dist. LEXIS 66574, at *9–10 (D. Haw. April 18, 2019); *Little v. State of Ill. Dep't of Revenue, Bureau of Criminal Investigation*, 907 F. Supp. 280, 284 (N.D. Ill. 1995); *Simmons v. Chicago Pub. Library*, 860 F. Supp. 490, 493 (N.D. Ill. 1994).  The Complaint here outlines (1) sexual intercourse between Plaintiff and Nagamine while Plaintiff was still a high school student and (2) Nagamine's history of grooming behavior toward Plaintiff. The Court discusses below whether the facts alleged are sufficient to plead a constitutional violation.  The Court need not address whether Nagamine was acting under color of law, because Nagamine has agreed, solely for purposes of this motion, that he was.  ECF No. 57 at 6–7 & n.1.

### a.   *Bodily Integrity Under the Due Process Clause*

Under the Due Process Clause, people "have a fourteenth amendment liberty interest in freedom from bodily injury."  *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996).  The right to one's bodily integrity is "infringed by a serious, as distinct from a nominal or trivial, battery."  *Alexander v. DeAngelo*, 329

F.3d 912, 916 (7th Cir. 2003); *see also Romero v. City of New York*, 839 F. Supp. 2d 588, 626 (E.D.N.Y. 2012). Consent generally justifies a state's bodily incursion that would otherwise violate the right to bodily integrity. *See Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1112–13 (9th Cir.1999); *Pabon v. Wright*, 459 F.3d 241, 253 (2nd Cir. 2006); *Bennett v. Pippin*, 74 F.3d 578, 584, 589 (5th Cir. 1996).

Nonconsensual sexual penetration is, without question, a sufficiently serious battery to warrant constitutional protection. *Alexander*, 329 F.3d at 916; *Romero*, 839 F. Supp. 2d at 626; *Bennett*, 74 F.3d at 584, 589. And in cases involving sexual relations with children, the child's lack of consent is often established as a matter of law. *See, e.g.*, *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994); *Romero v. City of New York*, 839 F. Supp. 2d 588, 626 (E.D.N.Y. 2012). Thus, in the educational context, where a state-employed teacher engages in sexual acts with a student under color of law, lack of consent is often assumed. *See, e.g.*, *Claiborne County*, 103 F.3d at 506.

In this case, however, Plaintiff was eighteen years old when she and Nagamine had sex. ECF No. 1 ¶ 59. Nagamine argues that because the sexual relationship was consensual, there can be no violation. *See* ECF No. 57 at 7–8. Although Plaintiff was eighteen years old at the time, and therefore legally capable of consenting, the Ninth Circuit cautions that disparate power dynamics may

"make it difficult to discern consent from coercion." *Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012). Courts have recognized that unjustified coercive means—often accomplished through disparate power dynamics—can vitiate consent. *See, e.g.*, *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 2003) (addressing "rape accomplished through the coercive power of [defendant's] status as a police officer"); *Wudtke v. Davel*, 128 F.3d 1057, 1059, 1063–64 (7th Cir. 1997) (sex performed under coercive means and threats sufficient to state bodily integrity violation); *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003) ("Sex procured by threats . . . is a common form of rape.").

In *Wood*, a male prisoner alleged that a female prison guard molested him in violation of his Eighth Amendment rights.[6] 692 F.3d at 1046–49. In overruling the district court's finding that there was no question of fact that the touching was consensual, the Ninth Circuit discussed the pronounced power disparities between prisoners and guards:

> Prisoners have no control over most aspects of their daily lives. They cannot choose what or when to eat, whether to turn the lights on or off, where to go, and what to do. They depend on prison employees for basic necessities, contact with their children, health care, and protection from other inmates.

---

[6] Although *Wood* involved an Eighth Amendment claim, the question of consent was dispositive as it is here.

*Id.* at 1047. The Ninth Circuit therefore recognized that in such power disparities, even where sexual interactions are "voluntary" (such as where a prisoner trades sexual services for benefits or to avoid reprisals), the sexual interactions may still be coercive to the point of vitiating consent. *Id.* Because of that power dynamic, the Ninth Circuit imposed a presumption that sexual interactions between prisoners and guards are nonconsensual. *Id.* at 1049. "The state then may rebut this presumption by showing that the conduct involved no coercive factors." *Id.*

Importantly for this case, the Ninth Circuit analogized the power disparities in prison to that of a teacher over a student. *Id.* at 1047. The Ninth Circuit observed that, just as in the prison context, the "power inequities between adults and minors, teachers and students, and owners and slaves foster opportunities for sexual abuse." *Id.* Indeed, sexual abuse in the school setting often arises from the teacher's use of authority over the student. *See, e.g.*, *Taylor*, 15 F.3d at 446–47 (allowing female students to receive high marks without doing work and writing suggestive notes on homework and test papers); *Stoneking*, 882 F.2d at 722 (allegations of band coach using threats of reprisals); *Kobrick v. Stevens*, No. 3:13-CV-2865, 2017 WL 3839945, at *8, 2017 U.S. Dist. LEXIS 141694, at *19 (M.D. Pa. Sept. 1, 2017) (teacher formally arranged for student and teacher to spend every study hall together). The power dynamic in high schools may be different in degree from prisons, but it is not different in kind. Schools and their staff—hired

not only to educate but also to protect children under their care—have significant authority over students. Indeed, high school students, who generally still rely on the care and supervision of parents and school officials, may in some cases be less capable of repelling coercive sexual advances from teachers, coaches or administrators than prisoners are from guards. *See Kobrick*, 2017 WL 3839945, at *8, 2017 U.S. Dist. LEXIS 141694, at *19 ("The student-teacher relationship is defined by a power dynamic which inherently renders the student vulnerable to coercion by opportunistic predators.").

The Court therefore holds that the rebuttable presumption of non-consent applies to sexual relationships between high school students and teachers, coaches, or administrators of the high school, regardless of age. This presumption, of course, does not apply to the many cases in which a minor's inability to legally consent will control. Here, because Plaintiff was eighteen the rebuttable presumption applies.

Under the *Wood* presumption, Plaintiff has adequately pled a cause of action under 42 U.S.C. § 1983 for a violation of her bodily integrity based on the sexual relationship with Defendant Nagamine, her high school softball coach.

b.    *Sexual Harassment Under the Equal Protection Clause*

"Sexual harassment by a public official in an educational setting violates the Equal Protection Clause and is cognizable under section 1983." *S.T. v. Yakima*

*School Dist. No. 7*, No. 11-CV-3085-TOR, 2013 WL 807197, at *4, 2013 U.S.

Dist. LEXIS 30914, at *11 (E.D. Wash. March 5, 2013) (citing *Oona R.-S. v.*

*McCaffrey*, 143 F.3d 473, 476 (9th Cir. 1998)).  Plaintiff cites to several cases

holding that sexual harassment amounting to a hostile educational environment

may be an Equal Protection violation.  ECF No. 53 at 4–5.  Under these cases, the

harassment must be (1) based on the plaintiff's sex, and (2) "sufficiently severe or

pervasive to interfere unreasonably with [the plaintiff's] educational activities."

*See Jennings v. Univ. of N.C.*, 482 F.3d 686, 701 (4th Cir. 2007); *see also Hyut v.*

*State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003); *Walsh v. Tehachapi Unified*

*Sch. Dist.*, 827 F. Supp. 2d 1107, 1118 (E.D. Cal. 2011); *Yakima*, 2013 WL

807197, at *4, 2013 U.S. Dist. LEXIS 30914, at *11.  The standards developed for

hostile work environment claims under Title VII apply to similar claims under

section 1983.  *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994).

The parties do not dispute that the alleged harassment was based on

Plaintiff's sex.  However, the second requirement—that the harassment be

sufficiently severe and pervasive to unreasonably interfere with the plaintiff's

educational activities—is not met here.  Plaintiff failed to allege how Nagamine's

behavior negatively impacted Plaintiff's educational experience: the Complaint is

completely silent in this regard.  And Plaintiff's surviving bodily integrity claim

does not necessarily equate to an adequately pled cause of action under the hostile

environment standard outlined in *Jennings*, 482 F.3d at 701, as the two standards are different.

Although the Complaint as pled fails to state a claim for sexual harassment under the Equal Protection Clause at outlined in *Jennings* and *Hyut*, leave to amend will be granted because allowing amendment would not necessarily be futile. *See, e.g.*, *Harris*, 682 F.3d at 1131 (9th Cir. 2012) (Under Rule 12(c), dismissal without leave to amend "is not appropriate unless it is clear . . . that the complaint could not be saved by amendment").

Nagamine argues that the Court should deny leave to amend because Plaintiff already filed a complaint and amended it twice on these allegations in *Jane Doe v. Hawaiʻi*, 17-cv-00164-LEK-RLP. ECF No. 57 at 11. But this argument is unavailing because that complaint is not before the Court. Moreover, the court in the prior case never ruled that the complaint was insufficient. Indeed, in the prior case, Defendants never filed any motions to dismiss, and the parties, including Defendant Nagamine, agreed to voluntarily dismiss the complaint without prejudice. Thus, the Court considers this complaint anew.

Nagamine also argues that the Court should deny leave to amend because trial is fast approaching and the deadline to amend the Complaint has passed. ECF No. 57 at 11–13. Nagamine argues that only good cause can justify an amendment. *Id.* This argument is equally unpersuasive. Nagamine's argument

confuses a plaintiff's ability to voluntarily amend a complaint after the deadline has passed under Rule 16(b)(4)'s "good cause" standard, with a Plaintiff's right to amend after a court dismisses a complaint for failing to state a claim. *See, e.g.*, *King v. Garfield Cty. Public Hosp. Dist. No. 1*, No. 12-CV-0622-TOR, 2013 WL 6842534, at *4, 2013 U.S. Dist. LEXIS 180836, at *11–12 (E.D. Wash. Dec. 27, 2013). After dismissal under Rule 12(b)(6) and 12(c), the standard is whether "amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *Harris*, 682 F.3d at 1131. Such a distinction is of particular importance here, where it was Nagamine who chose to file his motion for failure to state a claim this late in the litigation, more than a year after the Complaint was filed.

For the reasons discussed, the Court DENIES Nagamine's Motion for Judgment on the Pleadings with respect to Plaintiff's § 1983 claim based on a Due Process violation of bodily integrity, but the Court GRANTS Nagamine's Motion WITH LEAVE TO AMEND with respect to the § 1983 claim based on an Equal Protection violation.

### ii.      Title IX Claims (Count 2)

It is unclear whether Plaintiff initially brought her Title IX claims against Nagamine. ECF No. 1 at 19–21. Regardless, Plaintiff concedes that Title IX does not apply to defendants in their individual capacities. ECF No. 50 at 11. Thus,

Nagamine's Motion to Dismiss Plaintiff's Title IX claim against him (Count 2) is GRANTED.

### iii.    State Law Claims (Counts 3–8)

Nagamine moves for judgment on the pleadings of Plaintiff's state law claims. Nagamine argues that if the Court retains supplemental jurisdiction over the state law claims, the Court should dismiss the Third, Fourth, Sixth and Eighth causes of action for failing to state a claim. ECF No. 39-1 at 12–14.

#### a.    *Negligence / Gross Negligence (Count 3) and NIED (Count 6)*

Nagamine moves to dismiss the Third Cause of Action for "Negligence/Gross Negligence" on the grounds that the allegations fail to state a claim. ECF No. 39-1 at 13. Nagamine also argues that Plaintiff's Negligent Infliction of Emotional Distress ("NIED") claim should be dismissed.[7] ECF No. 57 at 9.

There are four elements of negligence under Hawai'i law:

(1) A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;  (2) A failure on the defendant's part to conform to the standard required: a breach of the duty; (3) A reasonably close causal connection between the conduct and the resulting injury; and (4) Actual loss or damage resulting to the interests of another.

---

[7] Although Nagamine only sought dismissal of the NIED claim in Reply, because the NIED and Negligence claims are similar here, the Court addresses both claims.

*Molfino v. Yuen*, 134 Haw. 181, 184 (2014) (quoting *Takayama v. Kaiser Found. Hosp.*, 82 Haw. 486, 498–99 (1996)).  With respect to the fourth element, where the plaintiff's injury is solely emotional or psychological, "the plaintiff must establish some predicate injury either to property or to another person in order himself or herself to recover for negligently inflicted emotional distress."  *Doe Parents No. 1 v. State, Dep't of Educ.*, 100 Haw. 34, 69 (2002).  The general rule in Hawaiʻi is thus "that an NIED claimant must establish, incident to his or her burden of proving actual injury . . . that *someone* was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else."  *Id.* at 69–70; *see also Ilae v. Tenn*, Civ. No. 12-00316 ACK-KSC, 2013 WL 4499386, at *20, 2013 U.S. Dist. LEXIS 118079, at *63–64 (D. Haw. Aug. 20, 2013).

"However, in cases that present unique circumstances, which provide the requisite assurance that the plaintiff's psychological distress is trustworthy and genuine, [the Hawaiʻi Supreme Court has] not hesitated to carve out exceptions to [the] general rule" requiring "physical injury to *someone*."  *Id.* at 70 (internal quotation marks and alterations omitted) (quoting *John & Jane Roes, 1-100 v. FHP, Inc.*, 91 Haw. 470, 474 & n.6 (1999)).  Thus, in *Doe Parents No. 1*, the Hawaiʻi Supreme Court held that no accompanying physical injury was required to state an NIED claim that arose from the sexual fondling or molestation of children by a school teacher.  *Id.*

Here, Plaintiff's Complaint is entirely devoid of allegations of any injury, physical or otherwise. Plaintiff merely asserts that she "has suffered and/or will suffer various economic, special, general and non-economic damages to be proven at trial." ECF No. 1 ¶ 101; ECF No. 53 at 8. Such conclusory allegations of damages are insufficient to meet the fourth element of a negligence claim. *See Tseu ex rel. Hobbs v. Jeyte*, 88 Haw. 85, 92–93 (1998) (affirming dismissal of NIED claim for failing to allege any "physical injury to herself or another"); *Molokai Veterans Caring For Veterans v. Cty. of Maui*, CIV. No. 10-00538 LEK, 2011 WL 1637330, at *28, 2011 U.S. Dist. LEXIS 46405, at *80 (D. Haw. Apr. 28, 2011) (dismissing negligence claim in part because plaintiff failed to allege any injury). The Court notes that Plaintiff must also plead a "reasonably close causal connection between the [negligent] conduct and the resulting injury." *Molfino*, 134 Haw. at 184. Of course, Plaintiff cannot do so without pleading the alleged injury.

For these reasons, Nagamine's motion to dismiss the Negligence claim (Count 3) and NIED claim (Count 6) against him is GRANTED WITH LEAVE TO AMEND.

### b. *Negligent Hiring, Training and Supervision (Count 4)*

Nagamine moves to dismiss the Fourth Cause of Action for "Negligent Hiring, Training and Supervision," ECF No. 1 at 22, on the grounds that there are no allegations in the complaint that Nagamine hired, trained or supervised any

employees. ECF No. 39-1 at 13–14. A claim for negligent hiring, training and supervision relates to an employer's liability for the conduct of their employees. *See, e.g.*, *Otani v. City and Cty. of Haw.*, 126 F. Supp. 2d 1299, 1308–09 (D. Haw 1998).

As the employee who allegedly harmed Plaintiff, it is unclear how this claim relates to Nagamine. Plaintiff did not respond to this concern in her Opposition. But Plaintiff appears to have intended to bring the Fourth Cause of Action against only the State Defendants. *See* ECF No. 52-1 at 13. Because Plaintiff's Opposition is silent in this regard, and because the allegations against Nagamine do not allege that he hired, trained or supervised anyone, the Court GRANTS Nagamine's Motion to dismiss the Negligent Hiring, Training and Supervision claim against him (Count 4) WITH PREJUDICE.

### c.    Punitive Damages (Count 8)

Nagamine moves to dismiss the Eighth Cause of Action for "Punitive Damages," ECF No. 1 at 25 on the ground that punitive damages are a form of damages, on not a cause of action. ECF No. 39-1 at 14. Plaintiff does not address this argument in her Opposition, but in her Opposition to the State Defendants' Motion for Summary Judgment, Plaintiff concedes that punitive damages are a remedy, and not a cause of action. ECF No. 52-1 at 13. The Court therefore DISMISSES Plaintiff's Eighth Cause of Action for "Punitive Damages."

## IV.  HERMOSURA'S MOTION FOR JUDGMENT ON THE PLEADINGS

### A.  Analysis

#### i.  Constitutional Violation Under 42 U.S.C. § 1983 (Count 1)

Defendant Hermosura argues that the Court should dismiss Plaintiff's § 1983 claim (Count 1) against him because there are insufficient allegations to state a claim for relief.  ECF No. 43-1 at 7–9.  Hermosura also contends that Plaintiff must meet a heightened pleading standard because the claims are subject to qualified immunity.  ECF No. 59 at 4–6.  But this argument was raised for the first time in reply, so the Court does not consider it.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000).  The only question is thus whether the Complaint properly states a claim for relief.

The Complaint does not allege that Hermosura was in any way involved in Nagamine's sexual harassment of Plaintiff.  Rather, Plaintiff seeks to attribute liability to Hermosura solely for his involvement in re-hiring Nagamine after Nagamine allegedly had a prior sexual relationship with an underaged softball player sometime around 1997.  ECF No. 50 at 10–11.  In her Opposition, Plaintiff points to paragraphs 72 through 77 of the Complaint to argue that there are sufficient allegations to hold Hermosura liable under 42 U.S.C. § 1983 for re-hiring Nagamine after the prior relationship.  *Id.*  The Court agrees with Hermosura that the Complaint is insufficient to state a claim against him.

Under 42 U.S.C. § 1983, supervisors may be liable for the constitutional violations of their subordinates if they are "personally involved" in the constitutional deprivation or where there is a "causal connection between the supervisor's wrongful conduct and the constitutional violation." *Grinston v. Southern Calif. Rapid Transit Dist.*, 229 F.3d 1157 (9th Cir. 2000) (citing *MacKinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995)). A causal connection may be established by evidence that the official "exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 259 (2d Cir. 2001) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Supervisor liability may also apply where the supervisor implements a "policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

As currently pled, Plaintiff's allegations against Hermosura are insufficient to meet this standard. The Complaint does not allege that Hermosura was

personally involved in Plaintiff's sexual harassment, nor is there an allegation that he implemented an unconstitutional policy. The Complaint only alleges in a vague yet conclusory fashion that Hermosura, along with six other defendants, "re-hire[d] [Nagamine] despite actual knowledge of Nagamine's having pursued his sexual interest within the School's student body of minors." ECF No. 1 ¶ 74. The Complaint does not allege what specific information Hermosura was aware of regarding Nagamine's past, nor what actions Hermosura took in Nagamine's re-hiring. Indeed, it is unclear whether Hermosura, as a softball coach, had any hiring authority at Campbell. Moreover, the Complaint makes only vague assertions regarding Nagamine's prior sexual relationship. The Complaint's allegations as currently pled are insufficient to plausibly state a claim against Hermosura.

Although the Complaint as pled fails to state a claim against Hermosura, amendment would not necessarily be futile. *See, e.g.*, *Harris*, 682 F.3d at 1131. While the Court is skeptical that amendment could save the claim, under *Johnson*, 239 F.3d at 259, and *Grinston*, 229 F.3d at 1157, it may be possible for Plaintiff to state a claim against Hermosura. Hermosura's arguments to deny plaintiff leave to amend are unpersuasive for the same reasons discussed with respect to Nagamine's Motion.

For these reasons, the Court GRANTS Hermosura's Motion for Judgment on the Pleadings on Count 1 WITH LEAVE TO AMEND.

### ii.    Title IX Claim (Count 2)

It is unclear whether Plaintiff initially brought her Title IX claim against Hermosura in his individual capacity.  ECF No. 1 at 19–21.  Regardless, Plaintiff concedes that Title IX cannot apply to defendants in their individual capacities.  ECF No. 50 at 11.  Thus, Hermosura's Motion for Judgment on the Pleadings regarding Plaintiff's Title IX claim (Count 1) against him is GRANTED.

### iii.    State Law Claims (Counts 3–8)

Hermosura argues that if the federal claims against him are dismissed, Plaintiff's state law claims should also be dismissed for lack of jurisdiction.  ECF No. 43-1 at 10.  Because the Court has granted Plaintiff leave to amend her § 1983 claim and it is unclear whether Plaintiff will retain a federal claim against Hermosura, the Court will not address jurisdiction over Plaintiff's state law claims at this time.  *See* 28 U.S.C. § 1367(c)(3); *Souch v. Howard*, 27 F. App'x 793, 795 (9th Cir. 2001).

## V.    CONCLUSION

For the foregoing reasons:

**(1)    The State Defendants' Motion for Summary Judgment (ECF No. 44) is GRANTED.**

    a.    The Court GRANTS the State Defendants' Motion for Summary Judgment on Plaintiff's federal claims (Counts 1–2).

    b.    The Court DISMISSES WITHOUT PREJUDICE the remaining state law claims for lack of jurisdiction (Counts 3–8).

**(2) Nagamine's Motion for Judgment on the Pleadings (ECF No. 39) is GRANTED in part and DENIED in part.**

    a.    The Court DENIES Nagamine's Motion with respect to Plaintiff's § 1983 bodily integrity claim (Count 1).

    b.    The Court GRANTS WITH LEAVE TO AMEND Nagamine's Motion with respect to Plaintiff's § 1983 Equal Protection claim (Count 1).

    c.    The Court GRANTS Nagamine's Motion with respect to Counts 2, 4, and 8.

    d.    The Court GRANTS WITH LEAVE TO AMEND Nagamine's Motion with respect to Plaintiff's Negligence and NIED claims (Counts 3 and 6).

**(3) Hermosura's Motion for Judgment on the Pleadings (ECF No. 43) is GRANTED.**

    a.    The Court GRANTS WITH LEAVE TO AMEND Hermosura's Motion with respect to Plaintiff's § 1983 claim (Count 1).

    b.    The Court GRANTS Hermosura's Motion with respect to Plaintiff's Title IX claim (Count 2).

Because trial is scheduled to begin September 23, 2019, and because Plaintiff and Defendants have had ample time for discovery and should be intimately familiar with the claims in this case, Plaintiff's deadline to file an amended complaint shall be on an expedited basis. If Plaintiff chooses to file an amended complaint, Plaintiff must file by **July 31, 2019**. Plaintiff is cautioned, however, that leave to amend is granted solely on the claims specified in this Order. Plaintiff may not add additional defendants or assert new claims without first seeking leave of court under the appropriate standard.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, July 24, 2019.



Jill A. Otake
United States District Judge

18-CV-0065 JAO-WRP, *Pantastico v. Dep't of Educ., State of Hawaii* - ORDER GRANTING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANT NAGAMINE'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND GRANTING DEFENDANT HERMOSURA'S MOTION FOR JUDGMENT ON THE PLEADINGS